**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
RASHID MUNIR, WAQAR U.R. REHMAN, : 
SALMAN HAQ, TAHIR M. KHAN, :
MOHAMMED N. MALIK  and MOHAMMED :
A. CHATTHA, on behalf of themselves and on :
behalf of all other similarly situated persons, :          Civil Action No.  13-cv-1581 (PKC)
     :
                   Plaintiffs, :
     :
        v. :
     :
SUNNY'S LIMOUSINE SERVICE, INC. and :
SHAFQAT CHAUDHRY, :
     :
               Defendants. :
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT, (2) COURT-FACILITATED NOTICE TO SIMILARLY SITUATED PERSONS AND (3) EXPEDITED DISCLOSURE OF CONTACT INFORMATION

THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

*Attorneys for Plaintiffs and*
*the Putative Collective*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

    Overview ......................................................................................................................... 2

    The Named Plaintiffs ..................................................................................................... 2

    Operation of Defendants' Business ............................................................................... 4

    Defendants' Wage Practices and Failure to Pay Minimum and Overtime Wage ........... 5

    Other Similarly Situated Employees .............................................................................. 7

ARGUMENT ........................................................................................................................... 8

    I.      CONDITIONAL CERTIFICATION IS APPROPRIATE ..................................... 8

          A.  The FLSA's Opt-In Requirements ................................................................... 8

          B.  The Two Phase Certification Process For FLSA Collective Actions ............... 9

          C.  Plaintiffs Have Made the Required Showing That they Are
               Similarly Situated To the Members of the FLSA Collective ........................... 11

    II.     COURT-AUTHORIZED NOTICE IS APPROPRIATE ...................................... 15

    III.   EXPEDITED DISCLOSURE OF NAMES AND
           CONTACT INFORMATION ............................................................................ 16

CONCLUSION ....................................................................................................................... 19

## **TABLE OF AUTHORITIES**

### **Cases**

Amendola v. Bristol-Myers Squibb Co.,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)..............................................................................11

Avila v. Northport Car Wash, Inc.,
    No. 10 CV 2211 (LDW) (AKT), 2011 WL 833642 (E.D.N.Y. 2011) ...........................17

Braunstein v. E. Photographic Laboratories, Inc.,
    600 F.2d 335 (2d Cir. 1978)............................................................................................15

Brock v. Superior Care, Inc.,
    840 F.2d 1054 (2d Cir. 1988)..........................................................................................18

Chowdhury v. Duane Reade, Inc.,
    No. 06 CIV 2295 (GEL), 2007 WL 2873929 (S.D.N.Y. 2007).......................................12

Cunningham v. Elec. Data Systems Corp,
    No. 06 CIV 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. 2010) ...........................9, 10, 11

Davis v. Abercrombie & Fitch,
    No. 08-civ-1859 (PKC), 2008 WL 4702840 (S.D.N.Y. 2008).........................................18

Foster v. Food Emporium,
    No. 99 CIV 3860 (CM), 2000 WL 1737858 (S.D.N.Y. 2000) ....................................9, 15

Guan Ming Lin v. Benihana Nat'l Corp.,
    No. 10 CIV 1335 (VM), 2010 WL 5129013 (S.D.N.Y. 2010)....................................9, 16

Hallissey v. Am. On-line, Inc.,
    No. 99 Civ. 3785, 2008 WL 465112 (S.D.N.Y. 2008) ....................................................11

Harrington v. Educ. Mgmt. Corp.,
    146 Lab. Cas. (CCH) 34554 (S.D.N.Y. 2002).................................................................17

Hoffman-LaRoche, Inc. v. Sperling,
    493 U.S. 165 (1989).............................................................................................9, 15, 16

Hoffman v. Sbarro,
    982 F. Supp. 249 (S.D.N.Y. 1997)..................................................................8, 10, 11, 16

Lee v. ABC Carpet & Home,
    236 F.R.D. 193 (S.D.N.Y. 2006) ....................................................................................10

Lynch v. United Services Auto. Ass'n.,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................9, 10, 11, 16

McBeth v. Gabrielli Truck Sales, Ltd.,
    No. 09 CV 04112 (LDW), 2011 WL 338123 (E.D.N.Y. 2011) ........................................18

Mentor v. Imperial Parking Systems, Inc.,
    246 F.R.D. 178 (S.D.N.Y.2007) .....................................................................10

Morales v. Plantworks, Inc.,
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. 2006).......................................10, 11

Myers v. Hertz Corp.,
    624 F.3d 537 (2d Cir. 2010)..........................................................................9, 10, 11,15

Raniere v. Citimortgage, Inc.,
    827 F.Supp. 2d. 294 (S.D.N.Y. 2011)................................................................17

Realite v. Ark Restaurants Corp.,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998).................................................................17

Spicer v. Pier Sixty LLC,
    269 F.R.D. 321 (S.D.N.Y. 2010) .................................................................10, 11

## **Statutes**

29 U.S.C. § 216(b). ...........................................................................8, 15

29 U.S.C. § 626(b) ...........................................................................8

Fed. R. Civ. P. 23 ...........................................................................11, 13

Plaintiffs Rashid Munir, Waqar U.R. Rehman, Salman Haq, Tahir M. Khan, Mohammed N. Malik and Mohammed A Chattha ("Plaintiffs"), and opt-in Plaintiff Asif T. Khan, by and through undersigned counsel, Thompson Wigdor LLP, hereby submit this motion for conditional certification of their claims under the Fair Labor Standards Act ("FLSA"), court-facilitated notice to similarly situated persons, and expedited disclosure of contact information.

## PRELIMINARY STATEMENT

Plaintiffs seek conditional certification of the collective group of persons employed by Defendant Sunny's Limousine Service, Inc. ("SLS") and Shafqat Chaudhury (together "Defendants"), as "Drivers" or "Chauffeurs" and any and all other similarly situated positions in New York, who were not paid minimum wage for all hours worked and/or not paid overtime compensation in violation of the FLSA for the period of three years prior to the filing of the Complaint to the date of the final disposition of this action (the "FLSA Collective").  As explained in detail below, conditional certification of this collective action, as well as the other relief sought, is appropriate because Plaintiffs have made the required "modest factual showing" that the members of the putative FLSA Collective located throughout New York were subjected to Defendants' common unlawful policies and practices which resulted in, *inter alia*, failure to pay the requisite minimum wage for all hours worked and/or overtime compensation under the FLSA.  Accordingly, in fulfillment of the broad remedial purposes of the FLSA, this Court should grant conditional certification as soon as possible to provide potential members of the FLSA Collective an opportunity to stem their daily loss of wages unlawfully denied to them by Defendants.

## STATEMENT OF FACTS

### Overview

On March 8, 2013, Plaintiff Rashid Munir filed the Complaint in this action alleging that Defendants violated the FLSA and the New York Labor Law ("NYLL") by, *inter alia*, failing to pay Drivers, Chauffeurs and similar positions in New York the minimum wage for all hours worked and/or overtime compensation for all hours worked in excess of 40 per week.  See Declaration of David E. Gottlieb ("Gottlieb Decl."), Ex. A.  Thereafter, Plaintiffs Weqar Rehman, Salman Haq, Tahir Khan, Mohammed Malik and Mohammed Chattha opted-in to this lawsuit.  See Gottlieb Decl., Ex. B.  On May 7, 2013, Plaintiffs filed an Amended Complaint wherein all opt-in Plaintiffs became named-Plaintiffs.  The Amended Complaint also included new causes of action for retaliation on behalf of Plaintiff Munir, and for illegal deductions from gratuities on behalf of all Plaintiffs and the proposed NYLL Class.  See Gottlieb Decl., Ex. C.  In addition to the FLSA and NYLL claims for minimum and/or overtime wages, Plaintiffs have also alleged causes of action under the NYLL for, *inter alia*, unlawful wage deductions, unlawful retention of gratuities, failure to provide timely wages, and failure to provide wages at the agreed upon rate.  See Gottlieb Decl., Ex. C.

### The Named Plaintiffs

Plaintiff Rashid Munir was employed by Defendants in New York as a Driver/Chauffeur from approximately June 2012 to March 2013.  See Declaration of Rashid Munir ("Munir Decl.") at ¶ 2.  Throughout the duration of his employment, Mr. Munir was classified as an "employee" and was paid wages with applicable income taxes and withholdings for which he received a Form W2.  Id. at ¶ 3.  While working for Defendants, Plaintiff Munir drove a Lincoln

MKT sports utility vehicle which did not hold more than 8 passengers and weighed less than 10,001 pounds.  Id. at ¶ 4.

Plaintiff Waqar U.R. Rehman was employed by Defendants in New York as a Driver/Chauffeur from approximately March 2012 to February 2013.  See Declaration of Waqar U.R. Rehman ("Rehman Decl.") at ¶ 2.  Throughout the duration of his employment, Mr. Rehamn was classified as an "employee" and was paid wages with applicable income taxes and withholdings for which he received a Form W2.  Id. at ¶ 3.  While working for Defendants, Plaintiff Rehamn drove a Lincoln Towncar, Lincoln MKT sports utility vehicle and a Cadillac Escalade sports utility vehicle, none of which held more than 8 passengers nor weighed more than 10,000 pounds.  Id. at ¶ 4.

Plaintiff Salman Haq was employed by Defendants in New York as a Driver/Chauffeur from approximately October 2007 to November 2012.  See Declaration of Salman Haq ("Haq Decl.") at ¶ 2.  Throughout the duration of his employment up until approximately October 2011, Mr. Haq was incorrectly paid as though he was an independent contractor for which he received a Form 1099.  Id. at ¶ 3.  Following approximately October 2011, he was reclassified as an "employee" and was paid wages with applicable income taxes and withholdings for which he received a Form W2.  Id. at ¶ 4.  While working for Defendants, Plaintiff Haq drove a Lexus RX sports utility vehicle which did not hold more than 8 passengers and weighed less than 10,001 pounds.  Id. at ¶ 5.

Plaintiff Tahir M. Khan was employed by Defendants in New York as a Driver/Chauffeur from approximately 2006 to January 2013.  See Declararion of Tahir M. Khan ("Khan Decl.") at ¶ 2.  Throughout the duration of his employment up until approximately October 2011, Mr. Khan was incorrectly paid as though he was an independent contractor for

which he received a Form 1099.  Id. at ¶ 3.  Following approximately October 2011, he was reclassified as an "employee" and was paid wages with applicable income taxes and withholdings for which he received a Form W2.  Id. at ¶ 4.  While working for Defendants, Plaintiff Khan drove a Lincoln Towncar sedan which did not hold more than 8 passengers and weighed less than 10,001 pounds.  Id. at ¶ 5.

Plaintiff Mohammed N. Malik was employed by Defendants in New York as a Driver/Chauffeur from approximately 2004 to February 2012.  See Declaration of Mohammed N. Malik ("Malik Decl.") at ¶ 2.  Throughout the duration of his employment up until approximately October 2011, Mr. Malik was incorrectly paid as though he was an independent contractor for which he received a Form 1099.  Id. at ¶ 3.  Following approximately October 2011, he was reclassified as an "employee" and was paid wages with applicable income taxes and withholdings for which he received a Form W2.  Id. at ¶ 4.  While working for Defendants, Plaintiff Malik drove a Mercedes S-500 and S-550 sedans which did not hold more than 8 passengers and weighed less than 10,001 pounds.  Id. at ¶ 5.

Plaintiff Mohammed A. Chattha was employed by Defendants in New York as a Driver/Chauffeur from approximately October 2012 to April 2013.  See Gottlieb Decl., Ex. C at ¶¶ 15, 25.  Throughout the duration of his employment, Mr. Chattha was classified as an "employee."  Id. at ¶ 39.  While working for Defendants, Plaintiff Chattha drove a Lincoln Towncar sedan and a Lincoln Navigator sports utility vehicle, which did not hold more than 8 passengers and weighed less than 10,000 pounds.  Id. at ¶ 25.

**Operation of Defendants' Business**

At all relevant times, Plaintiffs' primary duties were to provide transportation services largely to employees of large, institutional businesses who had contracts with Defendants.

Defendants' customers include, but are not limited to, BlackRock, Inc., the Cable News Network (commonly known as "CNN") and the law firm O'Melveny & Myers LLP.  See Gottlieb Decl., Ex. C at 18; Munir Decl. at ¶ 5; Rehman Decl. at ¶ 6; Haq Decl. at ¶ 6; Khan Decl. at ¶ 6; Malik Decl. at ¶ 6.  Defendants do not hold themselves out as a taxicab company; rather, on its website, SLS described the company as a "Chauffeured Transportation," service and a "worldwide leader of luxury transportation services."  See Gottlieb Decl., Ex. C at ¶ 19; Ex. D. In fact, the word "taxi" cannot be found anywhere in Defendants' name or website.

Defendants have not and do not maintain any permanent "stands" at any airport, train station, or other places where demands for transportation may be expected.  Defendants' vehicles, which have been used by Plaintiffs and the proposed FLSA Collective, are not metered. Rather, the fares for each assignment were and are predetermined pursuant to contracts between Defendants and their clients.  Defendants' vehicles have not had and do not have any vacancy signs or a list of fares posted either on the interior or exterior of the vehicle.  At all times, Plaintiffs drove vehicles which held less than eight passengers and weighs less than 10,001 pounds.  Defendants' business operations remained the same at all relevant times during Plaintiffs' employments.  See Gottlieb Decl., Ex. C at ¶¶ 20-25, 27, 29, 30; Munir Decl. at ¶¶ 4, 6-9; Rehman Decl. at ¶¶ 4, 6-9; Haq Decl. at ¶¶ 5, 7-10; Khan Decl. at ¶¶ 5, 7-10, Malik Decl. at ¶¶ 5, 7-10.

**Defendants' Wage Practices and Failure to Pay Minimum and/or Overtime Wage**

Prior to approximately October 2011, Defendants' misclassified Plaintiffs (aside from Plaintiff Munir and Plaintiff Chattha who joined Defendants after October 2011) as "independent contractors."  In or around October 2011, Defendants reclassified Plaintiffs as "employees" (the "Reclassification").  However, Plaintiffs' primary duties did not change following the

Reclassification.  See Gottlieb Decl., Ex. C at ¶¶ 26, 28, 32, 39; Haq Decl. at ¶¶ 3, 4, 6; Khan Decl. at ¶¶ 3, 4, 6; Malik Decl. at ¶¶ 3, 4, 6.

Throughout their employments, Plaintiffs were (and the proposed FLSA Collective continues to be) paid wages constituting a percentage of the customer charge, plus some gratuities.  Prior to the Reclassification, Defendants agreed to pay Plaintiffs at a rate of 50% of the total amount a customer paid SLS for a trip, plus a share of the total amount of gratuities paid by a customer.  The remainder of the gratuities would be unlawfully retained by Defendants. However, Defendants did not pay Plaintiffs at the agreed to rates.  Rather, Defendants misrepresented to Plaintiffs the rate being charged to customers for their routes.  Defendants then purported to pay Plaintiffs at a rate of 50% of the artificially lowered, misrepresented rate.  As a result, Plaintiffs were paid far less than the agreed upon rate, both as to the charge percentage and gratuities.  See Gottlieb Decl., Ex. C at ¶¶ 31, 36 -38; Haq Decl. at ¶¶ 11-13; Khan Decl. at ¶¶ 11-13; Malik Decl. at ¶¶ 11-13.

Following the Reclassification, Defendants agreed to pay Plaintiffs at a rate of 40% of the total amount a customer paid Defendants for a trip.  Defendants also agreed to pay Plaintiffs the total amount of gratuities paid by the customer.  However, subsequent to the Reclassification, Defendants still did not pay Plaintiffs at the agreed to rates.  Defendants continued to misrepresent to Plaintiffs the rate being charged to customers for their routes and tips. Defendants then purported to pay Plaintiffs at a rate of 40% of the artificially lowered, misrepresented rate.  As a result, Plaintiffs continued to be paid far less than the agreed upon rate, both as to the charge percentage and gratuities.  See Gottlieb Decl., Ex. C at ¶¶ 40-42; Munir Decl. at ¶¶ 10-12; Rehman Decl. at ¶¶ 10-12; Haq Decl. at ¶¶ 14, 15; Khan Decl. at ¶¶ 14, 15; Malik Decl. at ¶¶ 14, 15.

Moreover, throughout their employment, Plaintiffs regularly worked in excess of 40 hours per week.  Both before and after the Reclassification, Plaintiffs were regularly assigned to work twelve-hour shifts, six days a week, which comes to an average of approximately 72 hours per week.  Moreover, both before and after the Reclassification, Plaintiffs worked additional hours not part of their shifts, including, but not limited to,  time spent travelling to assigned locations, time spent during licensing, inspections, and time spent washing, servicing and maintaining vehicles.  Thus, both before and after the Reclassification, Plaintiffs worked between 72 hours and 84 hours per week.  However, Defendants failed to pay Plaintiffs one-and-one-half times the regular rate of pay for all hours worked in excess of 40 hours per week.  Moreover, Defendants failed to pay Plaintiffs for all hours worked and made unlawful deductions from Plaintiffs' wages (in violation of the NYLL), leading to wage payments that at times did not even meet the minimum wage for all hours worked, in further violation of the FLSA.  See Gottlieb Decl., Ex. C at ¶¶ 43-51; Gottlieb Decl. at ¶¶ 7-11, Ex. F; Munir Decl. at ¶¶ 13-15, Ex. A; Rehman Decl. at ¶¶ 13-15; Haq Decl. at ¶¶ 16-18; Khan Decl. at ¶¶ 16-18; Malik Decl. at ¶¶ 16-18.

**<u>Other Similarly Situated Individuals</u>**

Defendants have employed well in excess of 100 other employees as Drivers, Chauffeurs and similar positions in New York (mentioned heretofore and hereafter as the "FLSA Collective") during the relevant statutory period.  See Gottlieb Decl., Ex. C at ¶ 74; Munir Decl. at ¶ 16; Rehman Decl. at ¶ 17; Haq Decl. at ¶ 19; Khan Decl. at ¶ 19; Malik Decl. at ¶ 19.  All of these individuals were treated similarly with respect to not only with respect to violations of the FLSA, but the numerous other unlawful compensation policies and practices described herein.  Simply put, Defendants subjected all Drivers, Chauffeurs and similar positions in New York to

the same, uniform policies and practices which violated the law.  See Gottlieb Decl., Ex. C at ¶¶

43-56; Munir Decl. at ¶ 17; Rehman Decl. at ¶ 18; Haq Decl. at ¶ 20; Khan Decl. at ¶ 20; Malik

Decl. at ¶ 20.

## ARGUMENT

### I.   CONDITIONAL CERTIFICATION IS APPROPRIATE

#### A.   The FLSA's Opt-In Requirements

The FLSA states, in relevant part that:

> An action . . . may be maintained against any employer . . . in any
> Federal or State court of competent jurisdiction by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated.   No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing to
> become such a party and such consent is filed in the court in which
> such action is brought.

29 U.S.C. § 216(b).  In a collective action under Section § 216(b), unlike in a class action

pursuant to Fed. R. Civ. P. 23, an employee is not a member of the collective until the employee

affirmatively opts in to the collective action.  Id.  Thus, until similarly-situated employees file

consents to opt in to this action, the statute of limitations continues to run against them on a daily

basis.  Id.  Therefore, it is critical that similarly-situated employees be afforded notice and an

opportunity to opt in at the outset of the action, as their claims are being reduced and/or

extinguished by the passage of time.

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely

notice of their potential claims in Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).[1]

---

[1]      While the Supreme Court's decision in Hoffman-La Roche involved a collective action
under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA
collective actions with equal force because the ADEA specifically adopted the collective action
enforcement provisions of the FLSA.  See 29 U.S.C. § 626(b); Hoffman v. Sbarro, 982 F. Supp.
249, 261 n.15 (S.D.N.Y. 1997).

This seminal case sets forth the requirements for bringing a collective action under the FLSA. The Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources." Hoffman-LaRoche, 493 U.S. at 170.  The Court went on to point out that, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.; see also Foster v. Food Emporium, No. 99 CIV 3860 (CM), 2000 WL 1737858, *3 n.1 (S.D.N.Y. 2000) ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by.  For this reason, it is advisable that notice be given as soon as practicable."). Indeed, it is not uncommon for courts to approve expedited notice.  See Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Guan Ming Lin v. Benihana Nat'l Corp., No. 10 CIV 1335 (VM), 2010 WL 5129013 (S.D.N.Y. 2010); Lynch v. United Services Auto. Ass'n., 491 F. Supp. 2d 357, 366 (S.D.N.Y. 2007).

### B.    The Two Phase Certification Process For FLSA Collective Actions

The Second Circuit has approved a two-step process for district courts to utilize in determining whether to proceed collectively under Section 216(b).  See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  *First*, at an early stage, the court must make an initial determination limited strictly to whether the named plaintiffs are "similarly situated" to the potential members of the FLSA collective.  Id.; see also Cunningham v. Elec. Data Systems Corp No. 06 CIV 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. 2010) (citing Lynch, 491 F. Supp. at 368).  If the named plaintiffs make a "modest factual showing" that they and potential opt-in

plaintiffs "together were victims of a common policy or plan that violated the law," the court should facilitate notice to the potential members of the collective.  For this reason, the initial phase is called the "notice stage." [2]  Myers, 624 F. 3d at 555 (citing Sbarro, 982 F. Supp. at 261); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).

It is well established that the burden for demonstrating that potential plaintiffs are "similarly situated" is very low at the notice stage.  See Lynch, 491 F. Supp. 2d at 368; Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. 2006) ("The first stage, conditional certification, requires only a 'modest factual showing' based on the 'pleadings and affidavits' that the putative class members were 'victims of a common policy or plan that violated the law.").  Plaintiffs merely need to provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist."  Lynch, 491 F. Supp. 2d at 368.  At this first step, the court uses a "relatively lenient evidentiary standard to determine whether a collective action is appropriate."  Cunningham, 2010 WL 5076703 at *5 (citing Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y.2007)).   "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA."  Spicer, 269 F.R.D. at 336 (citing Morales, 2006 WL 278154 at *2).

If plaintiffs satisfy their burden of showing that "similarly situated" employees exist, the court should conditionally certify the class and order that appropriate notice be given to putative class members to afford them the opportunity to opt-in to the action.  Cunningham, 2010 WL 5076703 at *5; see also Lynch, 491 F.Supp. 2d at at 368 (citing Lee v. ABC Carpet & Home,

---

[2]      The "notice stage" in FLSA collective actions is often referred to as "conditional certification," borrowing the term "certification" from Fed. R. Civ. P. 23, whereby a class must be formally "certified" to proceed collectively.  This term is somewhat of a misnomer in FLSA actions as, unlike Rule 23, Section 216(b) of the FLSA does not have any "certification" provision, and FLSA plaintiffs are not required to establish any of the Rule 23 categories.

236 F.R.D. 193, 197 (S.D.N.Y. 2006)) ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.").

*Second*, after a substantial period of discovery has been completed, the defendants may move for "decertification" where the district court will be asked to conduct a more stringent analysis of whether the plaintiffs who have opted-in are in fact "similarly situated" to the named plaintiffs.  Myers, 624 F.3d at 555.  The action may be "decertified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.  Id.  The second step of the inquiry "utilizes a more stringent factual determination because the court is able to examine whether the actual plaintiffs brought into the case are similarly situated." Cunningham, 2010 WL 5076703 at *5.

### C.   Plaintiffs Have Made The Required Showing That They Are Similarly Situated To The Members Of The FLSA Collective

As stated above, to meet the minimal burden required for preliminary or conditional certification, Plaintiffs must make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  See Myers, 624 F.3d at 555 (citing Sbarro, 982 F. Supp. at 261).  This burden may be "satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation.  See Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); Hallissey v. Am. On-line, Inc., No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").  Thus, the proper inquiry is whether Plaintiffs are similarly-situated with respect to their allegations that the law has been violated, and not

whether Plaintiffs' job responsibilities are identical in every respect.  See Chowdhury v. Duane Reade, Inc., No. 06 CIV 2295 (GEL), 2007 WL 2873929, *5 (S.D.N.Y. 2007).

In this case, it is indisputable that Plaintiffs and the FLSA Collective they seek to represent are "similarly situated."   Defendants paid Plaintiffs on a percentage of the customer charge, plus gratuities, basis at all times.  See Gottlieb Decl., Ex. C at ¶ 31; Munir Decl. at ¶ 10; Rehman Decl. at ¶ 10; Haq Decl. at ¶ 11; Khan Decl. at ¶ 11; Malik Decl. at ¶ 11; Chattha Decl. at ¶ 10.  Plaintiffs' worked well in excess of 40 hours per week, usually between 72 and 84 hours, but their paystubs demonstrate that no premium rate of compensation was paid for any portion of their hours worked.  Defendants never paid Plaintiffs any overtime premium compensation for the hours they worked in excess of 40 hours per week.  See Gottlieb Decl. at ¶¶ 7-11, Ex. F; Gottlieb Dec., Ex. C at ¶ 46; Munir Decl. at ¶¶ 13-14, Ex. A; Haq Decl. at ¶ 16-17, Ex. A; Rehman ¶¶ 12-13, Ex. A; Khan Decl. at ¶¶ 16-17, Ex. A; Malik Decl. at ¶¶ 16-17.[3] Moreover, Plaintiff Munir's paystubs demonstrate that in some instances, Defendants failed to even pay Plaintiffs the minimum wage for all hours worked.  Defendants have failed to pay other individuals the minimum wage similar to Plaintiff Munir.  Gottlieb Decl. at ¶¶ 7-11, Ex. F; Munir Decl. at ¶ 15; Haq Decl. at ¶ 18, Ex. A; Rehman ¶ 14; Khan Decl. at ¶ 18; Malik Decl. at ¶ 18.

The unlawful manner in which Defendants compensated Plaintiffs was uniform and common to all other members of the proposed FLSA Collective.  Defendants required all Drivers, Chauffeurs and similar positions in New York to work approximately 72 to 84 hours per week.  Defendants paid all members of the proposed FLSA Collective on a percentage of the

---

[3]      As can be seen from the paystubs attached to the declarations, Defendants did not itemize Plaintiffs' hours worked on their paystubs.  Nonetheless, Plaintiffs have testified in their declarations that they worked in well excess of 40 hours per week (generally 72 to 84 hours per week), yet the attached paystubs do not reflect any premium rate of pay ever paid.

customer charge, plus gratuities.  Though all members of the proposed FLSA Collective worked well in excess of 40 hours per week, they were not provided any premium rate of compensation for any portion of their hours worked.  Like Plaintiffs, members of the proposed FLSA Collective were often not compensated at the minimum wage rate for all hours worked.  Munir Decl. at ¶¶ 10, 13-15; Rehman Decl. at ¶¶ 10, 14-16; Haq Decl. at ¶¶ 11, 16-18; Khan Decl. at ¶¶ 11, 16-18; Malik Decl. at ¶¶ 11, 16-18.

As stated above, Defendants' failed to pay Plaintiffs and more than 100 other members of the proposed FLSA Collective minimum and/or overtime wages for all hours worked due to the uniform application of Defendants' unlawful pay practices.  The documentary and testimonial evidence described above – bolstered  and corroborated by six former employees – amply satisfies the "modest factual showing" required to obtain conditional certification at this stage of the proceedings.  However, Plaintiffs can produce substantial additional evidence establishing the required factual nexus between Plaintiffs and the members of the proposed FLSA Collective. More specifically,

(i)     Plaintiffs and all Drivers and Chauffeurs were uniformly reclassified from "independent contractors" to "employees" contemporaneously in or around October 2011.  See Haq Decl. at ¶¶ 3, 4; Khan Decl. at ¶¶ 3, 4; Malik Decl. at ¶¶ 3, 4.

(ii)    Defendants purported to pay Plaintiffs and all Drivers and Chauffeurs uniformly at a rate of 50% of the trip rate plus a portion of gratuities before the Reclassification.  See Haq Decl. at ¶¶ 12, 13; Khan Decl. at ¶¶ 12, 13; Malik Decl. at ¶¶ 12, 13.

(iii)   Defendants purported to pay Plaintiffs and all Drivers and Chauffeurs uniformly at a rate of 40% of the trip rate plus gratuities after the Reclassification.  See Munir Decl. at ¶¶ 11, 12; Rehman Decl. at ¶¶ 11, 12; Haq Decl. at ¶¶ 14, 15; Khan Decl. at ¶¶ 14, 15; Malik Decl. at ¶¶ 14, 15.

(iv)    Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs performed nearly identical primary job duties.  See Munir Decl. at

13

¶¶ 5, 9; Rehman Decl. at ¶¶ 5, 9; Haq Decl. at ¶¶ 6, 10; Khan Decl. at ¶¶ 6, 10; Malik Decl. at ¶¶ 6, 10.

(v)      Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to unlawful deductions for items such as "personal auto use" and fuel from their wages without their written consent in violation of the NYLL.  See Munir Decl. at ¶ 15; Rehman Decl. at ¶ 16; Haq Decl. at ¶ 18; Khan Decl. at ¶ 18; Malik Decl. at ¶ 18.

(vi)     Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to Defendants' unlawful practice of failing to provide accurate wage statements in violation of the NYLL.  See Munir Decl. at ¶ 12; Rehman Decl. at ¶ 13; Haq Decl. at ¶¶ 13, 15; Khan Decl. at ¶¶ 13, 15; Malik Decl. at ¶¶ 13, 15.

(vii)    Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to Defendants' unlawful practice of misrepresenting the actual gratuities paid by customers, thus decreasing the amount of wages paid.  See Munir Decl. at ¶ 12; Rehman Decl. at ¶ 13; Haq Decl. at ¶¶ 13, 15; Khan Decl. at ¶¶ 13, 15; Malik Decl. at ¶¶ 13, 15.

(viii)   Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to Defendants' unlawful practice of misrepresenting the actual rate paid by customers, thus decreasing the amount of wages paid.  See Munir Decl. at ¶ 12; Rehman Decl. at ¶ 13; Haq Decl. at ¶¶ 13, 15; Khan Decl. at ¶¶ 13, 15; Malik Decl. at ¶¶ 13, 15.

(ix)     Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to Defendants' unlawful practice of failing to pay the agreed upon wages in violation of the NYLL, even where such violations do not necessarily invoke the FLSA.  See Munir Decl. at ¶ 12; Rehman Decl. at ¶ 13; Haq Decl. at ¶¶ 13, 15; Khan Decl. at ¶¶ 13, 15; Malik Decl. at ¶¶ 13, 15.

(x)      Both before and after the Reclassification, Plaintiffs and all Drivers and Chauffeurs were subjected to Defendants' unlawful practice of retaining and failing to distribute gratuities and "charges purported to be gratuities" to Drivers and Chauffeurs, in violation of the NYLL.  See Munir Decl. at ¶ 12; Rehman Decl. at ¶ 13; Haq Decl. at ¶¶ 13, 15; Khan Decl. at ¶¶ 13, 15; Malik Decl. at ¶¶ 13, 15.

Plaintiffs and the members of the proposed FLSA Collective they seek to represent are clearly "similarly situated," given the host of common and unlawful policies they were subjected to and the resultant violations of the FLSA perpetrated against all Drivers and Chauffeurs.

Accordingly, this Court should conditionally certify the requested FLSA Collective and authorize court-facilitated notice of this action.

## II.    <u>COURT-AUTHORIZED NOTICE IS APPROPRIATE</u>

In addition to an order conditionally certifying this collective action, Plaintiffs also respectfully request that the Court authorize that notice of this action to be sent to all potential members of the FLSA Collective.  While the FLSA does not expressly require the Court to authorize that notice be sent to the potential opt-in plaintiffs, the Second Circuit has recently recognized that, district courts "have discretion, in appropriate cases, to implement [216(b)] by facilitating notice to potential plaintiffs" of the pendency of the action and their opportunity to opt-in as represented plaintiffs.  <u>Myers</u>, 624 F.3d at 554 (citing <u>Hoffmann-La Roche</u>, 493 U.S. at 169).  Furthermore, the Second Circuit has held that "it makes more sense, in light of the 'opt-in' provision of § 216 (b) of the Act . . . to read the statute as permitting, rather than prohibiting, notice in appropriate cases."  <u>Braunstein v. E. Photographic Laboratories, Inc.</u>, 600 F.2d 335, 336 (2d Cir. 1978).  Moreover, the Supreme Court has expressed a clear preference for court-administered notice in opt-in actions: "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."  <u>Hoffman-LaRoche</u>, 493 U.S. at 172.

As previously noted, until the absent members of the FLSA Collective file consents to opt-in to this action, the statute of limitations is running against them on a daily basis.  <u>See</u> 29 U.S.C. § 216(b).  Accordingly, the timing of the notice given to putative members of the FLSA Collective is of great significance.  <u>See</u> <u>Foster</u>, 2000 WL 1737858, *3 n.1 ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by.  For this reason,

it is advisable that notice be given as soon as practicable."); Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Guan Ming Lin, 2010 WL 5129013 at *8; Lynch, 491 F. Supp. 2d at 367.

Equally important, similarly situated employees will remain unaware of the availability of this cost-effective means of enforcing their rights until they receive notice of this action. The primary benefit of collective actions under the FLSA – namely, the pooling of resources to lower individual costs – could very well play a decisive role in whether a similarly situated employee chooses to enforce his or her rights under the FLSA. These potential opt-in plaintiffs should be made aware of this avenue of enforcement as soon as possible so as to advise them of their rights to join this action.

Plaintiffs have proposed a Notice of Pendency and Plaintiff Consent Form consistent with prior notices routinely approved by courts in the Second Circuit. See Gottlieb Decl., Ex. E. Plaintiffs respectfully request that the Court approve the attached Notice of Pendency and approve the attached Plaintiff Consent Form, advising all potential opt-in plaintiffs of their right to join this collective action.

## III.    EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION

To provide all potential opt-in plaintiffs with notice of the pendency of this action, Plaintiffs require the names and contact information for those individuals. See Hoffman-La Roche, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."); Lynch, 491 F. Supp. 2d at 371 (explaining that "identification [of similarly situated employees] is necessary so that [plaintiff] can provide them

with notice of this action").  Without this information, Plaintiffs will be unable to inform other similarly situated persons of the pendency of this action.

Plaintiffs respectfully request that the Court direct Defendants to produce the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment for all persons employed by Defendants as a Driver, Chauffer or similar position in New York, from a period of six years prior to the filing of this Complaint to the present.  In interests of judicial economy, courts in the Second Circuit have regularly permitted notice to be sent to potential opt-in plaintiffs who may have viable state law claims within the six year statute of limitations period, even if some of those plaintiffs' FLSA claims might be time barred.  See Raniere v. Citimortgage, Inc., 827 F.Supp. 2d. 294, 327 (S.D.N.Y. 2011) (permitting "Plaintiffs to obtain the relevant contact information going back for a six-year period"); Avila v. Northport Car Wash, Inc., No. 10-cv-2211 (LDW) (AKT), 2011 WL 833642 (E.D.N.Y. 2011) (quoting Cano v. Four M Food Corp., No. 08 CV 3005, 2009 WL 5710143, at *10 (E.D.N.Y. 2009) ("I find it appropriate and in the interest of judicial economy in this case to allow the Plaintiffs to obtain the relevant contact information going back for a six-year period even if some recipients of the notice will have claims that are time-barred under the FLSA.")); Harrington v. Educ. Mgmt. Corp., 146 Lab. Cas. (CCH) 34554 (S.D.N.Y. 2002) ("The Court authorizes notice to go back six years with respect to those similarly situated employees who worked in the defendants' New York facilities, while notice for all other employees outside the state to extend three years."); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 310 (S.D.N.Y. 1998) (ordering disclosure of six years of employee contact information in hybrid FLSA and NYLL action).

However, at a bare minimum, Plaintiffs respectfully request the contact information for the members of the proposed FLSA Collective covering the period of three years prior to the

filing of this complaint through to the final disposition of this action.  The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act.  <u>See</u> 29 U.S.C. ¶ 255(a).  As the Second Circuit has explained, "a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act."  <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1062 (2d Cir. 1988).  Even where willfulness is disputed, courts approve, at a minimum, a three year period of disclosure.  <u>See</u> <u>Davis v. Abercrombie & Fitch</u>, No. 08 CIV 1859 (PKC), 2008 WL 4702840, *12 (S.D.N.Y. 2008) ("Courts that have faced this issue routinely approve a three-year notice period."); <u>McBeth v. Gabrielli Truck Sales, Ltd.</u>, No. 09 CV 04112 (LDW), 2011 WL 338123, *2 (E.D.N.Y. 2011) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action").

Thus, at a minimum, the Court should order disclosure of the names and requested contact information for a three year period.  Plaintiffs respectfully request disclosure all contact information as soon as practicable but in no event any later than seven days following the Court's order.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court (i)

conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA;

(ii) approve the proposed Notice of Pendency and Plaintiff Consent Form; and (iii) order

Defendants to provide the names, addresses, home and mobile telephone numbers, email

addresses, and dates of employment of all Drivers, Chauffeurs and similar positions in New York

from a date six years prior to the filing of this action.


Dated: New York, New York
      May 24, 2013

Respectfully submitted,

THOMPSON WIGDOR LLP

By: _____
    Douglas H. Wigdor
    David E. Gottlieb
    Tanvir Rahman

85 Fifth Avenue
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845
dwigdor@thompsonwigdor.com
dgottlieb@thompsonwigdor.com
trahman@thompsonwigdor.com

*Attorneys for Plaintiff and the*
*Putative Collective*

19