UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
RASHID MUNIR, WAQAR U.R. REHMAN, :
SALMAN HAQ, TAHIR M. KHAN, :
MOHAMMED N. MALIK and MOHAMMED : Civil Action No. 13-cv-1581 (VSB)
A. CHATTHA, on behalf of themselves and on :
behalf of all other similarly situated persons, :
                                                        : **DECLARATION OF**
                         Plaintiffs, : **DAVID E. GOTTLIEB**
                                                        :
             v. :
                                                          :
SUNNY'S LIMOUSINE SERVICE, INC. and :
SHAFQAT CHAUDHRY, :
                                                          :
                        Defendants. :
------------------------------------------------------------------- X

      I, David E. Gottlieb, pursuant to 28 U.S.C. § 1746, declare and state as follows:

      1.     I am an attorney duly admitted to practice law in the Southern District of New York and am a partner at the law firm of Wigdor LLP, attorneys for Plaintiffs Rashid Munir, Waqar U.R. Rehman, Salman Haq, Tahir M. Khan, Mohammad N. Malik and Mohammed A. Chattha (together "Named Plaintiffs") on behalf of themselves and the class of individuals they represent (collectively "Class Members" or "Plaintiffs").

## ATTACHED DOCUMENTS

      2.     A true and accurate copy of the Complaint filed in this action (the "Complaint") is attached hereto as **Exhibit A**.

      3.     A true and accurate copy of the Amended Complaint filed in this action (the "Amended Complaint") is attached hereto as **Exhibit B**.

      4.     A true and accurate copy of the Settlement Agreement (the "Agreement") is attached hereto as **Exhibit C**.

5. A true and accurate copy of the proposed Notice of Class Action Lawsuit and Fairness Hearing (the "Proposed Notice") is attached hereto as **Exhibit D**.

6. A true and accurate copy of the proposed Order Preliminarily Approving the Proposed Settlement, For Certification of the Settlement Class, For Appointment of Plaintiffs' Counsel as Class Counsel, and For Approval of the Proposed Notice of Class Action Lawsuit and Fairness Hearing (the "Proposed Order") is attached hereto as **Exhibit E**.

7. A true and accurate copy of the Notice of Pendency is attached hereto as **Exhibit F**.

8. A true and accurate copy of the Stipulation and Order Regarding Conditional Certification, Collective Action Notice, and Pre-Mediation Discovery is attached hereto as **Exhibit G**.

9. A true and accurate copy of the term sheet the Parties agreed to at the mediation session ("Term Sheet") is attached hereto as **Exhibit H**.

## FACTUAL REPRESENTATION FROM COUNSEL

10. On July 24, 2013, the Plaintiffs and Defendant Sunny's Limousine Services, Inc. ("Sunny's") and its owner Defendant Shafqat Chaudhry ("Mr. Chaudhry") (together, "Defendants") (altogether, the "Parties") stipulated to conditional certification and the sending of a notice to individuals with potential Fair Labor Standards Act ("FLSA") claims. On or about August 5, 2013, court-approved notices were sent to approximately 489 current and former drivers/chauffeurs of Sunny's ("Drivers"). At the conclusion of the 75-day opt-in period, in addition to the six Named Plaintiffs, 97 Drivers opted-in to this action (the "FLSA Collective").

11. At the same time that the Parties stipulated to conditional certification, the Parties agreed to forego full discovery, and instead engage in targeted discovery aimed at potential

resolution of the action through mediation. This targeted discovery involved the production, review and analysis of thousands of documents, which was extremely time consuming and expended significant resources. The Parties exchanged and analyzed thousands of pages of documents, and hundreds of thousands of rows of data on numerous Excel spreadsheets.

12. During targeted discovery, Defendants provided Plaintiffs' counsel ("Class Counsel") with, *inter alia*:

- A spreadsheet identifying each Driver from March 2007 to November 2013, including their start and end dates.

- A spreadsheet listing each assignment ("Ride") that 82 members of the FLSA Collective performed between July 2009 and November 2013. This spreadsheet details, *inter alia*, the (i) date of each Ride, (ii) pick-up and drop-off locations, (iii) various fares, fees and gratuities paid by the customer to Defendants, and (iv) the amount and categories of earnings paid from Defendants to the Driver. This spreadsheet, in total, details more than 91,000 different Rides.

- A spreadsheet listing the wages paid to the six Named Plaintiffs and eleven other Class Members (totaling a sample size of 17 Drivers) of the FLSA Collective in each two-week pay period between March 8, 2007 and July 31, 2013. This spreadsheet specifically lists all the categories of earnings and deductions applicable to each of these Drivers.

- Employment contracts and independent contractor agreements signed and/or applicable to members of the FLSA Collective concerning their work for Defendants.

- Contracts between Defendants and three of their largest corporate clients.

- Rate books in which Defendants listed the rates charged for Rides to and from specific geographic areas/locations.

13. In addition to the documents and information provided by Defendants, Plaintiffs produced more than 1,000 pages of documents from the Named Plaintiffs and certain Class Members, including paystubs and receipts, which served as a cross-check against the data provided by Defendants. Class Counsel also spoke to dozens of Drivers to gather additional

relevant information regarding Defendants' pay practices from March 8, 2007 through January 29, 2014 (the "Class Period").

14. All of the information and data provided in discovery was then analyzed with the involvement of the Named Plaintiffs. From this data and information, we were able to determine, *inter alia*, (i) the average shortfall in unpaid gratuities, per Driver, per workweek, (ii) the average shortfall in unpaid fares, per Driver, per workweek, (iii) the average wage deductions, per Driver, per workweek, and (iv) the average unpaid overtime, per Driver, per workweek. We were also able to estimate the approximate number of Class Members. Thus, we were able to determine a reliable estimate, based on substantial data, of class-wide damages. Therefore, the Parties have conducted substantial discovery which is more than sufficient to resolve the action responsibly.

15. Of course, this analysis was only a part of the equation, as Defendants had articulated potentially strong defenses that – while we felt confident could be overcome – needed to be considered.

16. It is our estimation that full discovery of this matter would be far more expansive than the targeted discovery conducted to date, given a class of approximately 841 Class Members, covering a period of more than six years, and involving various state and federal laws. This would likely involve hundreds of thousands of additional documents, dozens of depositions, expert witness discovery, and almost certainly numerous motions to compel. Although Plaintiffs could obtain additional information in full discovery, it is extremely unlikely that full discovery would have changed the analysis.

17. It is also our estimation that, following discovery, there would be hotly-contested motions for decertification of the FLSA Collective action and certification of the New York

4

Labor Law ("NYLL") class action, and both Parties would likely move for full or partial summary judgment.

18. We expect that preparing for and putting on evidence at a trial would be lengthy and complex, and would consume the time and resources for the Parties and the Court. We also expect that any potential judgment at trial would likely be appealed, further extending the litigation.

19. We would also anticipate potentially protracted efforts to collect on any potential judgment.

20. We believe, on the other hand, that this settlement makes monetary relief available to Class Members in a prompt, efficient and relatively risk-free manner.

21. Based on the discovery exchanged to date and discussions during the mediation, it is clear that Defendants operate in a tremendously competitive environment in which there are a scarce number of potential customers that numerous companies compete over. Moreover, it is my understanding that recent companies that have sprouted up in the business of luxury car transportation services – most notably *Uber* – may affect Defendants' business in unforeseen ways. Furthermore, it is our understanding that Defendants' "brand name" may not be of sufficient value such for Defendants to pay a large judgment rather than simply close operations.

22. Defendants have also represented during this litigation that collectability will be problematic for Plaintiffs.

23. As such, it is our belief that a trial on the merits would involve significant risks as to liability, damages and collectability.

24. For instance, we anticipate that Plaintiffs would have to overcome Defendants' defenses, including but not limited to: (1) that the Class Members were properly classified as

"independent contractors" between March 8, 2007 and November 1, 2011, thus not covered employees pursuant to the FLSA or NYLL; (2) that Class Members were properly paid their agreed upon wages; (3) that Class Members were exempt from overtime under various exemptions, including the "Taxicab Exemption," and/or the "Motor Carrier Exemption;" (4) that any deductions from Class Members' wages were not unlawful; and (5) that the "reasonable customer" knew that various charges were not "gratuities" being distributed to Drivers.

25. Moreover, we would expect Defendants to almost certainly fight class treatment of the Class Members' claims on the grounds that they were too individualized to certify a class and/or collective.

26. While we believe that Plaintiffs would have a strong chance of ultimately establishing Defendants' liability, this would require significant factual and legal development, and overcoming the existence of certain unfavorable documents. Class Counsel is experienced and realistic and understands that the outcome at trial and the inevitable appeals are inherently uncertain.

27. The Named Plaintiffs have been advised of the potential upsides of proceeding on the merits, but believe settlement is in the best interest of the Class Members.

28. Here, Named Plaintiffs do not have substantial financial resources to prosecute individual actions. In addition, Class Counsel is unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.

29. On January 29, 2014, the Parties held an all-day mediation session before experienced employment mediator Martin F. Scheinman, Esq. in New York City. At the conclusion of this session, the Parties arrived at an agreement in principle to settle this matter for a sum of $3,500,000, which was memorialized in the Term Sheet. See Ex. H.

30. Following several rounds of negotiations concerning the final language in the final settlement and release, on March 31, 2014, the Parties executed the Agreement. The allocation formula of the Agreement provides 1 point per workweek pre-August 1, 2013 and 0.5 points per workweek from August 1, 2013 through the end of the Class Period because, pursuant to discussions with Drivers and review of documents in discovery, Defendants changed their pay structure on or about August 1, 2013 and began paying Drivers on an hourly basis and even though certain wage violations continued, certain wage violations were remedied. See Ex. C.

31. The Named Plaintiffs provided significant services to the Class Members, which included, but were not limited to: (i) searching for and providing documents, (ii) providing information for interrogatory responses, (iii) reviewing and approving pleadings, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) attending and actively participating in the mediation, and (vi) undertaking the risk of retaliation.

## QUALIFICATIONS OF CLASS COUNSEL

### A. DAVID E. GOTTLIEB

32. I have been one of the lead attorneys on this matter with Douglas H. Wigdor and Tanvir H. Rahman as the other lead attorneys.

33. I am currently a Partner at Wigdor LLP.

34. I received a B.A. in political science and philosophy from the University of Arizona in 2002. I received a J.D. from the University of Miami in 2005.

35. I am a member of the State Bar of New York and also the New York State Bar Association. I am admitted to practice in New York, as well as the Eastern and Southern Districts of New York and the Second Circuit Court of Appeals.

36. During my professional career, I have been involved in hundreds of employment matters, including complex wage-and-hour class actions and large multi-plaintiff discrimination cases, and have handled matters as lead counsel from inception through trial and appeal.

37. In March 2012, I was co-lead counsel in a two-plaintiff discrimination and retaliation trial before The Honorable Leonard D. Wexler.

38. I have been lead counsel in this matter, which has involved significant expenditures of time managing numerous clients and motion practice. I have also managed and supervised the work of associates and paralegals on this matter.

39. I have been lead counsel in other actions where class counsel status has been approved and our firm has been approved as class counsel on numerous occasions.

40. As will be apparent from the information regarding attorneys' fees that will be submitted with the motion for final approval, we have committed substantial resources to the litigation of this action.

### B. DOUGLAS H. WIGDOR

41. Douglas H. Wigdor is a founding partner of Wigdor LLP (formerly Thompson Wigdor LLP as of December 31, 2013). Mr. Wigdor has been practicing law for nearly 20 years, with a primary focus on litigation and labor and employment law. Mr. Wigdor is a member of the bar of the States of New York, Pennsylvania and the District of Columbia. Mr. Wigdor is also admitted to practice before the United States Supreme Court, the Second Circuit Court of Appeals, and the United States District Courts for the Southern, Northern and Eastern Districts of New York. Mr. Wigdor is also admitted to practice law in the United Kingdom, and is a qualified solicitor in England and Wales.

42. Mr. Wigdor received an undergraduate degree in Political Science from Washington University in St. Louis and graduated *cum laude* in 1990.

43. Mr. Wigdor received a Juris Doctor from the Catholic University of America in Washington, D.C. in 1993, where he graduated at the top of his class. During law school, Mr. Wigdor was a Senior Staff Member of the *Catholic University Law Review*.

44. Mr. Wigdor received a Masters Degree in Politics from Oxford University in England in 1995. While at Oxford, Mr. Wigdor was an editor of the *Oxford International Review*.

45. Mr. Wigdor served as an Assistant District Attorney in Suffolk County, New York from 1995 to 1998, during which time he prosecuted and tried hundreds of criminal matters, ranging from robberies and burglaries to complex fraud schemes. While with the D.A.'s Office, Mr. Wigdor was promoted to the Complex Litigation Bureau, where he litigated and supervised the prosecution of white-collar crime, organized crime, bank fraud, insurance fraud, tax evasion, identity theft and elder abuse cases. Due to the breadth of his experience, Mr. Wigdor was appointed under the Federal Criminal Justice Act to serve a three-year term, in the Eastern District of New York, as a criminal defense lawyer in selected criminal cases.

46. Mr. Wigdor also served as a federal law clerk to United States District Judge Arthur D. Spatt for two years, from 1998 to 1999.

47. Mr. Wigdor was also a senior lawyer in the labor and employment section of Morgan, Lewis & Bockius LLP ("Morgan Lewis") from 2000 through 2003. At Morgan Lewis, Mr. Wigdor litigated and tried cases on behalf of Fortune 500 clients on issues relating to a broad range of U.S. and U.K. labor and employment matters. These matters included the successful defense of one of the nation's leading defense industry contractors accused of age discrimination before a jury trial before U.S. District Judge Leonard D. Wexler.

48. Since founding Wigdor LLP, Mr. Wigdor has represented management side employers, high-level employees and entry-level employees. The vast majority of Mr. Wigdor's current practice is comprised of labor and employment related litigation in both federal and state courts, including wage and hour, discrimination and harassment claims, and contract and severance negotiations. These litigations have resulted in a number of victories for his clients in employment-related matters, both in court and in arbitration. By way of example only, in 2011, Mr. Wigdor obtained an approximately $24 million verdict in an arbitration on behalf of the former Chief Financial Officer of Six Flags before Hon. George C. Pratt, obtained a $7.5 million verdict in a disability discrimination case against Wal-Mart in the Eastern District of New York before Hon. James Orenstein, a $7.5 million verdict in a sexual harassment/retaliation case in the Southern District before Hon. Jed S. Rakoff, a $2.25 million dollar verdict in a violation of due process claim against the County of Nassau in the Eastern District before Hon. Arlene R. Lindsay, and a $1.35 million verdict in a 2012 disability discrimination case in the Eastern District before Hon. Leonard D. Wexler. Mr. Wigdor has also obtained two recent defense verdicts on behalf of management side client, UBS Financial Services, Inc.

49. Mr. Wigdor is also a frequent lecturer, editor and author of articles on employment and criminal related subjects, including lectures sponsored by PLI and various other groups.

50. Mr. Wigdor has appeared regularly in both print and television media as an expert in employment law, including the New York Times, Wall Street Journal, CNN, CNBC, ABC, CBS, the London Independent, the Financial Times, and NPR.

51. Mr. Wigdor was selected as a member in both the Alexander Hamilton and Theodore Roosevelt Inns of Court wherein he works together with other selected lawyers and state and federal judges in the analysis of current legal issues. Additionally, Mr. Wigdor is a

member of the Association of the Bar of the City of New York and the Suffolk County Bar Association, where he is a member of the Labor and Employment Law and Criminal Law Committees and where he has given CLE-approved lectures on employment law.

52. In addition, Mr. Wigdor was recognized by both *The Best Lawyers in America* and *Super Lawyers,* two important peer review studies, as one of the nation's leading labor and employment lawyers. Mr. Wigdor has also received an AV rating from Martindale-Hubbell.

### C.   TANVIR H. RAHMAN

53. Tanvir H. Rahman is an associate at Wigdor LLP. Mr. Rahman received a B.A. in political science and economics, *summa cum laude*, from Hunter College in 2007. Mr. Rahman received a J.D. from New York University School of Law in 2010.

54. Mr. Rahman is admitted to practice in New York, as well as the Second Circuit Court of Appeals and Eastern and Southern Districts of New York. Mr. Rahman is also admitted to practice in New Jersey.

55. Since joining Wigdor LLP in 2011, Mr. Rahman has been involved in dozens of labor and employment matters, including complex wage-and-hour class and collective actions, and large multi-plaintiff discrimination cases. Mr. Rahman has handled matters at all stages of litigation.

56. Mr. Rahman has spent hundreds of hours litigating this matter, including managing an opt-in notice period in which over 400 notices were sent to putative FLSA Collective members. Mr. Rahman also has had extensive interactions with the Named Plaintiffs and opt-in plaintiffs in this case, including numerous office meeting and telephone conversation, guiding the Named Plaintiffs and other Plaintiffs through a litigation process very foreign to many of them, through each step of the action.

57.     Mr. Rahman also reviewed thousands of pages of documents produced by Defendants, analyzed nearly a half dozen detailed spreadsheets provided by Defendants, and created dozens of spreadsheet and charts aimed at calculating damage estimates for Plaintiffs numerous categories of claims.

58.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: April 18, 2014
       New York, New York

_____
David E. Gottlieb